

# IN THE COURT OF CRIMINAL APPEALS
# OF TEXAS

### NO. PD-0758-15

**DEWAN MORGAN, Appellant**

**v.**

**THE STATE OF TEXAS**

### ON STATE'S PETITION FOR DISCRETIONARY REVIEW
### FROM THE SECOND COURT OF APPEALS
### DENTON COUNTY

**RICHARDSON, J., delivered the opinion for a unanimous Court.**

### O P I N I O N

Appellant, Dewan Morgan, was convicted of burglary of a habitation and sentenced to sixteen years' imprisonment. Concluding that the evidence was insufficient to support the jury finding that Appellant entered a habitation "without the effective consent of the owner,"[1] the Second Court of Appeals reversed Appellant's conviction because he was a

---

[1] A person commits an offense if, without the effective consent of the owner, the person (1) enters a habitation . . . with intent to commit a felony, theft, or an assault. . . ." TEX. PENAL CODE § 30.02(a)(1).

"cotenant" of the apartment he broke into.[2] We disagree with that holding because, under the facts of this case, it runs contrary to the Texas Penal Code's definition of "owner" as a person with "a greater right to possession of the property than the actor."[3] Appellant's girlfriend, as the complainant, was the "owner" of the apartment because she held a greater right to possession than Appellant. And, at the time of the commission of the offense, Appellant did not have her effective consent to enter. Therefore, we hold that the evidence was legally sufficient to support the burglary conviction. We reverse the judgment of the court of appeals.

## BACKGROUND

In November of 2012, when Appellant was unemployed, he moved in with his girlfriend, Regina Raglin. Regina gave him a key to the apartment, but she did not add his name to the apartment lease, and she alone paid the rent. After some time, Appellant found a job and began helping with household expenses. Appellant's driver's license did not reflect Regina's address as his residence.

The testimony at trial revealed that police had been called to a prior argument between Appellant and Regina. In April of 2013, Regina told the police officer responding to her 911

---

[2] *Morgan v. State*, 465 S.W.3d 327, 330 (Tex. App.—Ft. Worth 2015) ("Here, Appellant was a cotenant of Complainant when she locked the door and he kicked it in.")

[3] TEX. PENAL CODE § 1.07(a)(35)(A). *Alexander v. State*, 753 S.W.2d 390, 392 (Tex. Crim. App. 1988) ("Ownership of the burglarized premises may be proven in one of three ways: (1) title, (2) possession, or (3) a greater right to possession than the defendant.").

call that Appellant had slapped her face and threatened her with a knife.[4]  Appellant continued to live with Regina after that incident.

This offense occurred two months later.  On the morning of June 20, 2013, Regina and Appellant argued.  Although she was trying to avoid him that day, they ran into each other at a convenience store near the apartment.  Appellant followed Regina back to the apartment. Regina locked the deadbolt from the inside so that Appellant could not get in with his key.[5] Her testimony was clear that, at that time, she did not want Appellant getting in to the apartment.  When Appellant tried his key in the lock and it did not work, he knocked on the door and rang the doorbell.  Regina did not open the door.  Appellant threw a rock, which broke the side window, and then began kicking at the door.  Regina fled to her back bedroom and called 911.  Appellant finally kicked in the door and came inside.  He grabbed Regina, pushed her to the bed, bit her on the side of her left breast, punched her, and choked her.  The police arrived and arrested Appellant for assault.  He was ultimately charged with burglary.[6]

---

[4] The officer stated that when he arrived at the apartment, Regina told him Appellant had pushed her against the wall and slapped her in the face.  He said that Regina also told him Appellant "grabbed the largest knife in the kitchen and jerked it at her placing her in fear of her life." However, when Regina testified at trial, she said she had made up the part about the knife.

[5] Regina testified that she "locked the one that he wouldn't be able to use the key to get in."

[6] The detective assigned to the case changed the charge to burglary of a habitation.  He did not testify at trial.

***At trial***

Regina testified at trial that, when the police arrived on the scene, she told them that Appellant lived there—Appellant had a key to the apartment, kept his personal items there, and helped with some bills and expenses. She stated it was not her intent, by locking Appellant out of the apartment, that he not live there anymore, but to just stay away to cool off. However, Regina admitted that, at the time Appellant forced his way into the apartment by kicking in the door, she had not wanted him to come into the apartment.

The court's charge to the jury included the following definitions:

Our law provides a person commits the offense of Burglary of a Habitation if, without the effective consent of the owner, he

(a) enters a habitation with intent to commit an assault; or

(b) enters a habitation and commits or attempts to commit an assault.[7]

"Effective consent" means assent in fact, whether express or apparent, and includes consent by a person legally authorized to act for the owner. Consent is not effective if induced by force, threat, deception, or fraud.[8]

"Owner" means a person who has title to the property, possession of the property, or a greater right to possession of the property than the person charged.[9]

The jury found Appellant guilty of burglary of a habitation.

---

[7] TEX. PENAL CODE § 30.02(a)(1).

[8] TEX. PENAL CODE § 1.07(a)(11) and (19)(A).

[9] TEX. PENAL CODE § 1.07(a)(35).

## *On Direct Appeal*

Appellant argued on direct appeal that the evidence was insufficient to support the jury's verdict of guilt because the State failed to prove beyond a reasonable doubt that he entered the apartment without the effective consent of the owner. The Second Court of Appeals agreed, holding that there was no evidence of the absence of "the owner's" consent. The court of appeals relied on Texas Code of Criminal Procedure, Article 21.08, which provides that, in an indictment,

> [w]here one person owns the property, and another person has the possession of the same, the ownership thereof may be alleged to be in either. Where property is owned in common, or jointly, by two or more persons, the ownership may be alleged to be in all or either of them.[10]

Noting that Appellant "lived at the apartment and kept his possessions inside it," the court of appeals reasoned that Appellant, as a cotenant, was also an owner of the apartment, and he therefore "had the right to occupy and control the apartment until his tenancy was terminated."[11] In holding that the evidence was insufficient to support the burglary conviction, the court of appeals concluded that "[t]here is no evidence that Appellant's tenancy was terminated before his arrest for the incident, but there is evidence in the form

---

[10] TEX. CODE CRIM. PROC. art. 21.08.

[11] *Morgan*, 465 S.W.3d at 330 ("The testimony shows that Appellant was either a tenant at will or a tenant at sufferance." (first citing *Black v. State*, 505 S.W.2d 821, 823 (Tex. Crim. App. 1974), then citing *Petty v. Dunn*, 419 S.W.2d 417, 421 (Tex. Civ. App.—Tyler 1967, writ ref'd n.r.e.), and then citing 49 TEX. JUR. 3d Landlord and Tenant §§ 13-14 (2009))).

of complainant's testimony that she specifically did not intend to terminate Appellant's tenancy."[12]   We granted the State's Petition For Discretionary Review to address this holding.[13]

## ANALYSIS

### *The Standard of Review*

The standard for reviewing the sufficiency of the evidence is whether "*any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt."[14]  We must view "the evidence in the light most favorable to the verdict."[15]  This Court's role on appeal "is restricted to guarding against the rare occurrence when a fact finder does not act rationally," and we must "defer to the responsibility of the trier of fact to

---

[12] *Id.*

[13] The two grounds raised in the State's Petition for Discretionary Review are:

> (1)    In burglary of habitation cases, must trial and appellate courts utilize property law to determine who qualifies as the "owner" of a habitation as defined by the Penal Code?

> (2)    To qualify as "entry without the effective consent of the owner" how much time must elapse after a victim revokes consent for her live-in boyfriend to enter her home for his forcible entry to be deemed a burglary?

[14] *Laster v. State*, 275 S.W.3d 512, 517 (Tex. Crim. App. 2009) (quoting *Jackson v. Virginia*, 443 U.S. 307, 319 (1979) (emphasis in original); *see also Brooks v. State*, 323 S.W.3d 893, 912 (Tex. Crim. App. 2010) ("[T]he *Jackson v. Virginia* standard is the only standard that a reviewing court should apply in determining whether the evidence is sufficient to support each element of a criminal offense that the State is required to prove beyond a reasonable doubt).

[15] *Merritt v. State*, 368 S.W.3d 516, 525 (Tex. Crim. App. 2012).

fairly resolve conflicts in testimony, to weigh the evidence, and to draw reasonable inferences from basic facts to ultimate facts."[16] The key question is whether "the evidence presented actually supports a conclusion that the defendant committed the crime that was charged."[17] Sufficiency of the evidence is a question of law.

> The issue on appeal is not whether we as a court believe the prosecution's evidence or believe that the defense evidence "outweighs" the State's evidence. If there is evidence which establishes guilt beyond a reasonable doubt, and if the trier of fact believes that evidence, we are not in a position to reverse the judgment on sufficiency of the evidence grounds.[18]

Legal sufficiency of the evidence "is measured by the elements of the offense as defined by the hypothetically correct jury charge."[19] The hypothetically correct jury charge "sets out the law, is authorized by the indictment, does not unnecessarily increase the State's burden of proof or unnecessarily restrict the State's theories of liability, and adequately describes the particular offense for which the defendant was tried."[20] Our Legislature has made it clear that the jury charge must "set[] forth the law applicable to the case."[21]

---

[16] *Isassi v. State*, 330 S.W.3d 633, 638 (Tex. Crim. App. 2010) (internal citations omitted).

[17] *Williams v. State*, 235 S.W.3d 742, 750 (Tex. Crim. App. 2007).

[18] *Wicker v. State*, 667 S.W.2d 137, 143 (Tex. Crim. App. 1984) (citing *Combs v. State*, 643 S.W.2d 709, 716 (Tex. Crim. App. 1982)).

[19] *Malik v. State*, 953 S.W.2d 234, 240 (Tex. Crim. App. 1997).

[20] *Id.*

[21] TEX. CODE CRIM. PROC. art. 36.14; *Gray v. State*, 152 S.W.3d 125, 127-28 (Tex. Crim. App. 2004)(discussing Article 36.14 and its requirement that the trial court fully instruct the jury on the law applicable to the case and apply that law to the facts presented).

"[D]efinitions for terms that are not statutorily defined are not considered to be the applicable law under Article 36.14 and it is thus generally impermissible for the trial court to define those terms in the jury instructions."[22]

### *Who Was The "Owner" of the Apartment?*

As correctly set forth in the charge to the jury, a person commits the offense of burglary of a habitation if, without the effective consent of the owner, he (a) enters a habitation with intent to commit an assault; or (b) enters a habitation and commits or attempts to commit an assault.[23] "A person charged with burglary under Section 30.02(a)(1) is guilty of that offense the moment that he crosses the threshold of a habitation without consent and with the intent to commit the underlying felony."[24]

Appellant disputes the element of ownership. Essentially, his argument is that he is an "owner" of the apartment, and thus he cannot be guilty of burglarizing his own residence. The court of appeals agreed with Appellant, finding that he was a cotenant with Regina. As noted above, the court of appeals cited to Article 21.08 in support of its conclusion that Appellant, as a cotenant with Regina, was an equal "owner" of the apartment. However,

---

[22] *Green v. State*, 476 S.W.3d 440, 445 (Tex. Crim. App. 2015) (citing various cases from this Court that illustrate our holding).

[23] TEX. PENAL CODE § 30.02(a).

[24] *Langs v. State*, 183 S.W.3d 680, 686 (Tex. Crim. App. 2006) (first citing TEX. PENAL CODE § 30.02(a)(3), and then citing *Garcia v. State*, 571 S.W.2d 896, 899 (Tex. Crim. App. 1978)).

Article 21.08 "is a rule of pleading," and it is "not a part of the definition of the offense."[25] The jury charge rightfully did not include Article 21.08 in its instructions. Article 21.08 is only applicable in evaluating the sufficiency of an indictment.[26] It does not provide a true definition of the term "owner."

The Penal Code imparts a specialized and technical meaning to the word "owner," defining it as a person who (1) has title to the property, (2) possession of the property, or (3) a greater right to possession of the property than the actor.[27] This definition was properly included in the jury charge as the law applicable to the case. The "greater right of possession" doctrine applies to any prosecution for burglary.[28]

---

[25] *Freeman v. State*, 707 S.W.2d 597, 603 (Tex. Crim. App. 1986).

[26] If Appellant had been in the apartment, and a third person had kicked in the door, then Appellant could have been listed in the indictment as the complainant and "owner." However, this does not affect Regina's "ownership" of the apartment in this case, or his lack of consent to enter. *See, e.g., Garza v. State*, 344 S.W.3d 409, 413 (Tex. Crim. App. 2011) (observing that under the Penal Code, "the legislature has given 'owner' an expansive meaning: anyone having a possessory interest in the property . . . whether lawful or not, or a greater interest in the property than the defendant, is an owner of the property" (citing *Freeman*, 707 S.W.2d at 603)); *Walling v. State*, 437 S.W.2d 563, 564 (Tex. Crim. App. 1969) ("The provisions of Article 21.08, . . . as to ownership apply alike to special owners as well as general owners. . . ." (internal citation omitted)). For purposes of the burglary statute, "[o]wnership [of a building or habitation] is not restricted to those persons having title interest in the property, but can include those in possession." *Krause v. State*, 243 S.W.3d 95, 103 (Tex. App. —Houston [1st Dist.] 2007, pet. ref'd) (citing *Ex parte Davis*, 542 S.W.2d 192, 195 (Tex. Crim. App. 1976)).

[27] TEX. PENAL CODE § 1.07(a)(35)(A).

[28] *Alexander*, 753 S.W.2d at 392.

The Penal Code definition of "owner" clearly indicates that a defendant who has some, but less, right to control a habitation than the alleged owner may be prosecuted for burglary.[29]  The key is not whether Appellant had a right to possession of the property, but whether Regina's right to possess the property was greater than Appellant's.  Only her name was on the lease, and she paid the rent.  Regina is the one who gave Appellant a key to the apartment, and she is the one who could take it away.  His status as her roommate at the time did not give him equal "ownership" rights to the apartment.  We hold that, at the time of the offense, Regina's right to possess the apartment was greater than Appellant's.  At that time, she was the "owner."

The court of appeals relied on *Black v. State*[30] to support its use of landlord-tenant law to interpret Appellant's right of tenancy to the apartment.  However, that case is distinguishable.  In *Black*, the defendant was found inside Chow's Food Center at night.  The State charged him with burglary and alleged Chow to be the owner.  The defendant argued that there was a fatal variance between the indictment and the proof because the State had

---

[29] *See Compton v. State*, 607 S.W.2d 246, 250-51 (Tex. Crim App. [Panel Op.]1980) (op. on state's mot. for reh'g) ("By adding the third theory of ownership to the penal code, i.e., greater right to possession, it is clear that the Legislature intended to expand the class of individuals to be protected from theft.").  This third theory clearly applies to those persons with joint interest in property. *Id.* at 251 (citing TEX. PENAL CODE § 31.10, which provides that, "It is no defense to prosecution under this chapter that the actor has an interest in the property or service stolen if another person has the right of exclusive possession of the property.").

[30] 505 S.W.2d 821 (Tex. Crim. App. 1974).

condemned the property, making the State the actual owner.[31] This Court disagreed, noting that under Article 21.08, the ownership of the property could be alleged as either Chow or the State.[32] Since Chow had the right to occupy the building, the State properly alleged him as the owner.[33]

The court of appeals also cited to *Elliot v. State*[34] to support its holding. However, *Elliot* does not support its holding. In *Elliot*, the defendant was charged with carrying a gun onto another's property. He argued that he was on his wife's property at the time, so he had the right to have a gun on the property.[35] But the defendant and his wife no longer lived on the property. Although the defendant and his wife owned the property, at that time they were renting it out, and the current tenants were on the property when the defendant went there with a gun.[36] This Court held that the tenants had the right to control the property.[37] Therefore, *Elliott* actually supports the State's argument that Regina—having a greater right

---

[31] *Black*, 505 S.W.2d at 822-823.

[32] *Id.* at 823.

[33] *Id.*

[34] 45 S.W. 711 (Tex. Crim. App. 1898).

[35] *Id.* at 712.

[36] *Id.*

[37] *Id.*

to possession of the property than Appellant—was the rightful owner, and entry by the defendant "was not authorized."[38]

We hold, therefore, that a rational jury could conclude beyond a reasonable doubt that Regina was the "owner" of the apartment because she had a greater right to possession than Appellant.

### *No Effective Consent To Enter*

Appellant also claims that Regina's locking the door was temporary and not intended to be a withholding of her effective consent to enter. He asserts that he had Regina's "effective consent" to enter because she had not revoked her consent for him to live there with her. Appellant claims Regina's testimony showed that she did not intend to permanently kick him out of the apartment and that she never communicated to Appellant that he could no longer live at the apartment.

In *Freeman v. State*,[39] we held that a person's "right to possession" must be measured at the time of the accused's alleged criminal act. "[W]here there are competing equal possessory interests in the property, the Legislature intended that in making the decision as to which of the competing interests had the greater right to possession of the property, the

---

[38] *Id.*

[39] 707 S.W.2d 597 (Tex. Crim. App. 1986).

time of the actual commission of the offense is all important."[40] The "owner" is who, *at the time of the commission of the offense,* had the greater right to possession of the property.[41] We conclude that, if a person's status as "owner" is measured at the time of the criminal act, then so is the giving, or removing, of the effective consent to enter.

This Court has held that, the testimony of an owner that she did not give permission to enter the habitation is "sufficient to establish the absence of effective consent."[42] Regina's testimony made it clear that, at the time of the offense, she and Appellant had been arguing, Appellant was angry, and Regina had locked him out of the apartment. Regina testified that she was trying to prevent Appellant from coming into the apartment by locking the deadbolt so he could not use his key to enter. A rational jury could have found beyond a reasonable doubt that Appellant entered the apartment without the effective consent of Regina, the owner.

## CONCLUSION

The jury charge correctly tracked the penal code definitions of "burglary," "owner," and "effective consent." No other instructions pertaining to ownership or cotenancy were given, nor would it have been appropriate to include them. The jury was therefore authorized

---

[40] *Freeman*, 707 S.W.2d at 604.

[41] *Id.* at 603 (emphasis in original) (citing In re Winship, 397 U.S. 358 (1970)).

[42] *Ellett v. State*, 607 S.W.2d 545, 550 (Tex. Crim. App. [Panel Op.] 1980).

to find that Regina was the owner of the apartment because she had a greater right to possession of the apartment than Appellant, and at the time that Appellant entered the apartment, he did so without the effective consent of Regina and with the intent to assault her. Deferring to the responsibility of the jury to fairly resolve conflicts in testimony, to weigh the evidence, and to draw reasonable inferences, we hold that the evidence presented was legally sufficient to support the jury's conclusion that Appellant committed the offense of burglary. We reverse the judgment of the Second Court of Appeals and remand the case to the trial court to reinstate Appellant's conviction for burglary of a habitation.

DELIVERED: September 28, 2016

PUBLISH