Opinion filed November 27, 2019



In The

# Eleventh Court of Appeals

_____

## No. 11-17-00350-CR

_____

## JOHNNY WAYNE ROBERTSON, Appellant

## V.

## THE STATE OF TEXAS, Appellee

**On Appeal from the 441st District Court**
**Midland County, Texas**
**Trial Court Cause No. CR45429**

## M E M O R A N D U M   O P I N I O N

The State charged Johnny Wayne Robertson with capital murder in connection with the death of Jennifer Sockey.  The jury convicted Appellant of the lesser included offense of murder and assessed punishment at confinement for ninety-nine years.  We affirm.

Appellant raises two issues on appeal.  First, Appellant challenges the sufficiency of the evidence to support the conviction.  Second, Appellant contends that counsel for the State made improper remarks during jury argument.

Appellant and Sockey were in a romantic relationship and lived together in Sockey's small house in Midland. Testimony at trial characterized their relationship as "abusive." Appellant and Sockey often drank and then had arguments that ended in Appellant's becoming violent. Sockey's neighbors testified that they had seen bruises on Sockey after she and Appellant had been in an argument; the neighbors had called the police on Sockey's behalf on multiple occasions.

Merisa Mireles, one of Sockey's neighbors, testified that, on one occasion, she had heard "bickering and fighting and yelling" coming from Sockey's residence and that she ran outside to see what was happening. Sockey's front door was open, and she was standing in the living room just inside the front door. Appellant was standing outside the front door next to a small charcoal grill that had a fire burning in it. Mireles saw Appellant grab the grill and hurl it through the front door and into the living room where Sockey was standing. Mireles called the police and got Sockey out of the house. Mireles testified that Sockey was crying and "just kept repeating, 'He's trying to kill me. . . . I'm telling y'all, he's trying to kill me. Nobody believes me.'"

Around six months later, Officer Zackary Owens with the Midland Police Department responded to a call that there was a structure fire at Sockey's address. When he arrived, the house "was fully engulfed in flames." He and another officer then "attempted to make contact with anybody inside but were unsuccessful." Midland Fire Department Captain Preston Wright found Sockey inside the burning home; Sockey was dead.

After the fire had been extinguished, Detective David Olvera sent officers to locate Appellant, who was absent from the scene. The officers found Appellant asleep in a draw under a nearby bridge. Appellant appeared to be heavily intoxicated, and the hair on his arms was singed.

The officers took Appellant to the scene of the fire. After the officers and Appellant arrived there, the officers arrested Appellant on an existing warrant and took him to the police department.

Detective Olvera testified that he conducted an interview with Appellant after the fire. During the interview, Appellant initially claimed that he was trying to cook dinner for Sockey. Appellant suggested that, when he lit the grill to warm up the water for Ramen noodles, "he could have stepped on the lighter fluid and spilled some charcoal over it." Later in the interview, however, Appellant admitted that he intentionally started the fire. Appellant told Detective Olvera that he started the fire because he wanted to get back at Sockey.

In his first issue, Appellant asserts that the evidence was legally and factually insufficient to convict him of murder. We note that there is no longer any distinction between the legal and factual sufficiency standards of review. *Brooks v. State*, 323 S.W.3d 893, 894–95 (Tex. Crim. App. 2010); *Polk v. State*, 337 S.W.3d 286, 289 (Tex. App.—Eastland 2010, pet. ref'd) ("Accordingly, a challenge to the factual sufficiency of the evidence is no longer viable."). Thus, whether styled as a factual or legal insufficiency point, we apply the *Jackson v. Virginia* standard in determining whether the evidence is sufficient to support each element of a criminal offense. *Polk*, 337 S.W.3d at 288–89 (citing *Jackson v. Virginia*, 443 U.S. 307 (1979)); *see Brooks*, 323 S.W.3d at 895.

Under the *Jackson v. Virginia* standard, we review all the evidence in the light most favorable to the verdict and determine whether any rational trier of fact could have found the essential elements of the offense beyond a reasonable doubt. *Jackson*, 443 U.S. at 319. We measure the sufficiency of the evidence by "the elements of the offense as defined by the hypothetically correct jury charge" for the case. *Morgan v. State*, 501 S.W.3d 84, 89 (Tex. Crim. App. 2016); *Malik v. State*, 953 S.W.2d 234, 240 (Tex. Crim. App. 1997).

The jury is the sole judge of the credibility and weight to be attached to the testimony of witnesses and may draw reasonable inferences from the facts, so long as the evidence presented at trial supports those inferences. *Temple v. State*, 390 S.W.3d 341, 360 (Tex. Crim. App. 2013) (citing *Jackson*, 443 U.S. at 319). When the evidence contains facts that support conflicting inferences, "we presume that the jury resolved the conflicts in favor of the verdict and therefore defer to that determination." *Id.* (citing *Jackson*, 443 U.S. at 326).

Appellant claims that Sockey's level of intoxication led to her death and that the fire was the result of an accident; he therefore argues that a rational trier of fact could not have found the essential elements of murder beyond a reasonable doubt. We disagree.

We will first consider Appellant's claim that the evidence was insufficient to show that the fire caused Sockey's death. As an element of murder, the State had to prove beyond a reasonable doubt that Sockey died as a result of Appellant's starting the fire in her home. *See* TEX. PENAL CODE ANN. § 19.02(b)(3) (West 2019).

Evidence at trial established that Sockey drank often and that she was very intoxicated at the time of her death. Dr. Marc Krouse, the Tarrant County Chief Deputy Medical Examiner, performed an autopsy on Sockey. He testified that Sockey's blood alcohol concentration was at 0.215 when she died. Using the 0.08 standard for driving while intoxicated in Texas as a point of comparison, Dr. Krouse described Sockey's blood alcohol concentration level as being very high and indicated that the average person would be stumbling at that level. When asked whether a blood alcohol level of 0.215 could itself suffice to actually cause death, Dr. Krouse testified that it could not. On cross-examination, Dr. Krouse testified that a blood alcohol concentration as high as Sockey's could play "a minor contributing role," though it would not be a cause of death.

4

However, Dr. Krouse also testified that the level of carbon monoxide he detected in Sockey would itself suffice to actually cause death. In fact, based on the autopsy, Dr. Krouse determined Sockey's cause of death to be "inhalation of smoke and carbon monoxide due to the residence fire." He testified ultimately that even a person in perfect health could not survive the level of carbon monoxide saturation detected in Sockey as a result of the fire.

We will next consider Appellant's contention that his accidentally causing the fire that killed Sockey does not establish proof of murder beyond a reasonable doubt. In order to convict Appellant of murder as charged in this case, the State had to prove beyond a reasonable doubt that Appellant started the fire with the intent to destroy or damage Sockey's home. *See* PENAL §§ 19.02(b)(3), 28.02(a).

The jury heard evidence on Appellant's claim that the fire started as an accident. As we have noted, Appellant originally told Detective Olvera that he was trying to cook dinner for Sockey. Appellant claimed that "he could have stepped on the lighter fluid and spilled some charcoal over it." Later in the interview, however, Appellant admitted to intentionally starting the fire and told Detective Olvera that he did so because he wanted to get back at Sockey.

We have reviewed the record and the evidence in the light most favorable to the verdict of the jury, and we conclude that the evidence is sufficient to support Appellant's conviction. We overrule Appellant's first issue.

In his second issue, Appellant contends that certain remarks made by the State in its closing jury arguments during both the guilt/innocence and punishment phases of trial were improper. According to Appellant, the State exceeded permissible limits during its closing, made unfair arguments to the jury, and apparently sought to bring the jurors into the case as future possible victims.

Although Appellant points to several statements made by the prosecutor during closing arguments, he did not object to any of those statements at trial. The

State maintains that Appellant has therefore failed to preserve his complaint for appellate review. We agree. Failure to object to remarks made during jury argument results in forfeiture of the right to complain about the remarks on appeal. *Cockrell v. State*, 933 S.W.2d 73, 89 (Tex. Crim. App. 1996); *see Archie v. State*, 221 S.W.3d 695, 699 (Tex. Crim. App. 2007) ("To preserve error in prosecutorial argument, a defendant must pursue to an adverse ruling his objections to jury argument."). We overrule Appellant's second issue.

We affirm the judgment of the trial court.


JIM R. WRIGHT
SENIOR CHIEF JUSTICE


November 27, 2019

Do not publish. *See* TEX. R. APP. P. 47.2(b).

Panel consists of: Bailey, C.J.,
Stretcher, J., and Wright, S.C.J.[1]

Willson, J., not participating.

---

[1]Jim R. Wright, Senior Chief Justice (Retired), Court of Appeals, 11th District of Texas at Eastland, sitting by assignment.