# NO. 12-23-00237-CR

# IN THE COURT OF APPEALS

# TWELFTH COURT OF APPEALS DISTRICT

# TYLER, TEXAS

| | | |
|---|---|---|
| *TYLER DE'SHUNTA SMITH,*<br>*APPELLANT* | *§* | *APPEAL FROM THE 7TH* |
| *V.* | *§* | *JUDICIAL DISTRICT COURT* |
| *THE STATE OF TEXAS,*<br>*APPELLEE* | *§* | *SMITH COUNTY, TEXAS* |

### *MEMORANDUM OPINION*

Appellant, Tyler De'Shunta Smith, appeals his conviction for burglary of a habitation. In one issue, he challenges the sufficiency of the evidence to support the jury's verdict. We affirm.

### BACKGROUND

In the early hours of February 14, 2022, Officer Zach Allen of the Lindale Police Department was dispatched to Cedar Knoll Apartments in Lindale, Texas, in relation to a criminal trespass. When he arrived, Allen encountered Kaicee Williams, who was bleeding from the area of her ear. Williams stated that Appellant, her ex-boyfriend, struck her about the head and caught her ear with his fingernail, but he was no longer present. Law enforcement obtained a warrant for Appellant's arrest for the offense of burglary of a habitation and executed the warrant on March 25, 2022. Appellant pleaded "not guilty," and this matter proceeded to a jury trial.

### Williams's Testimony

Williams testified that she and her daughter moved into the Cedar Knoll Apartments residence in August of 2020. She and Appellant were dating, but his name was never listed on the lease because of his "previous history." The property manager initially consented to

Appellant's presence, and one of the utility bills was initially in Appellant's name. In December 2020, management requested a criminal trespass warning against Appellant barring him from the premises.[1] Williams stated that Appellant did not reside at the apartment thereafter, although she occasionally permitted him to stay with her for no more than two days at a time. At an unspecified time in 2021, law enforcement responded to the apartment for criminal trespass by Appellant but did not arrest him. Williams testified that she took Appellant's name off the electricity bill after this incident.

Williams stated that on the night of the charged offense, she received a ride back to her apartment from a Super Bowl party. Appellant was sitting in the parking area in his car, unable to go inside because he did not have a key. Williams gave Appellant money for gas to return to his residence and Appellant drove away. Shortly thereafter, Williams exited the apartment to take her dog outside and failed to lock the door. While Williams was still outdoors, Appellant drove back into the parking lot, ran into the apartment, and locked the door behind him. From the kitchen window, Williams saw Appellant perusing her personal items and taking objects, including a credit card, her cell phone charger, and a pocketknife. Williams called the police while standing in front of the apartment door. Subsequently, Appellant opened the door and immediately "pushed [Williams] back," then either slapped or punched her "to move [her] out of the way." During the altercation, Appellant swung the knife at Williams and cut her ear, after which Appellant left the premises. When the police arrived, Williams said that she wished to press charges for the criminal trespass, but not assault. At the end of February 2022, Williams moved to a different apartment located in Tyler, Texas. Appellant helped her move, but did not move there with her because they agreed to end their relationship. Subsequently, on March 25, 2022, Appellant showed up at the Tyler apartment and demanded entry. Williams called law enforcement, who subsequently arrested Appellant in connection with the events of February 14.

**Appellant's Testimony**

Appellant testified that when he and Williams moved into the Cedar Knoll apartment in August 2020, he paid all the bills, but was not on the lease because he was on parole from a past robbery conviction. Appellant initially had a key to the apartment but eventually misplaced it and never got another. The original criminal trespass arose from a "petty" disagreement between

---

[1] Officer Carlos Flores of the Lindale Police Department testified that on December 18, 2020, at the request of the management of Cedar Knoll Apartments, he issued a criminal trespass warning against Appellant instructing him not to return to the premises.

himself and Williams about a television. Appellant stated that he left for only a couple of hours after this incident. Following the second criminal trespass incident, Appellant left the residence for approximately one day, after which Williams invited him back to the apartment and everything went "back to normal."

Appellant also gave his version of the events that occurred on the night of February 13, 2022. He explained that he was waiting in his car in the parking lot since he did not have a key, and once Williams arrived, he followed her into the apartment. Williams accused him of infidelity, and the two began arguing. Appellant packed his personal belongings and attempted to leave, but Williams stepped in front of him to block him from leaving the bedroom. Appellant "pushed her back" and entered the living room, after which Williams hit him from behind and caused him to drop some items he was carrying. A "physical altercation" ensued, during which Appellant ejected Williams from the apartment and locked the door. Appellant opened the door when he heard Williams threaten to call the police; when she entered, Williams attempted to strike Appellant. Appellant testified that he attempted to step back or brace himself, but "reacted" by hitting her, which caused the scratch on Williams's ear. He then ran outside to his car and left the premises. He stated that he and Williams did not physically fight in the parking lot at any point, and he denied having or using a knife at any point during the incident. Appellant returned to the Cedar Knoll apartment the following evening and lived there with Williams until the end of February, when the two moved to Tyler together. Appellant testified that he was "at home" at the Tyler apartment when arrested in connection with the charged offense, and returned there with Williams after she bailed him out of jail.

The jury found Appellant "guilty" of the charged offense and assessed punishment of five years' imprisonment. This appeal followed.

## SUFFICIENCY OF THE EVIDENCE

In his sole issue, Appellant argues that the evidence was legally insufficient to support a finding that he entered a habitation without the effective consent of the owner, as required for the offense of burglary of a habitation.[2]

---

[2] Appellant additionally argues that the evidence was legally insufficient to support a finding that he intended to commit an assault before entering the apartment. However, the indictment in this case alleges that Appellant "attempted to commit or committed an assault against Kaicee Williams," and contains no allegations

**Standard of Review and Applicable Law**

The ***Jackson v. Virginia*** legal sufficiency standard is the only standard that a reviewing court should apply in determining whether the evidence is sufficient to support each element of a criminal offense that the state is required to prove beyond a reasonable doubt. *See **Brooks v. State***, 323 S.W.3d 893, 895 (Tex. Crim. App. 2010). Legal sufficiency is the constitutional minimum required by the Due Process Clause of the Fourteenth Amendment to sustain a criminal conviction. *See **Jackson v. Virginia***, 443 U.S. 307, 315–16, 99 S. Ct. 2781, 2786–87, 61 L. Ed. 2d 560 (1979). The standard for reviewing a legal sufficiency challenge is whether any rational trier of fact could have found the essential elements of the offense beyond a reasonable doubt. *See **Jackson***, 443 U.S. at 320, 99 S. Ct. at 2789; *see also **Johnson v. State***, 871 S.W.2d 183, 186 (Tex. Crim. App. 1993). The evidence is examined in the light most favorable to the verdict. *See **Jackson***, 443 U.S. at 320, 99 S. Ct. at 2789; ***Johnson***, 871 S.W.2d at 186. A jury is free to believe all or any part of a witness's testimony or disbelieve all or any part of that testimony. *See **Lee v. State***, 176 S.W.3d 452, 458 (Tex. App.–Houston [1st Dist.] 2004), *aff'd*, 206 S.W.3d 620 (Tex. Crim. App. 2006). A successful legal sufficiency challenge will result in rendition of an acquittal by the reviewing court. *See **Tibbs v. Florida***, 457 U.S. 31, 41–42, 102 S. Ct. 2211, 2217–18, 72 L. Ed. 2d 652 (1982).

Circumstantial evidence is as probative as direct evidence in establishing guilt, and circumstantial evidence alone can be sufficient to establish guilt. ***Rodriguez v. State***, 521 S.W.3d 822, 827 (Tex. App.–Houston [1st Dist.] 2017, no pet.) (citing ***Sorrells v. State***, 343 S.W.3d 152, 155 (Tex. Crim. App. 2011)). Each fact need not point directly and independently to the guilt of the appellant, as long as the cumulative force of all the incriminating circumstances is sufficient to support the conviction. *See **Hooper v. State***, 214 S.W.3d 9, 13 (Tex. Crim. App. 2007). Juries are permitted to draw multiple reasonable inferences as long as each inference is supported by the evidence presented at trial. ***Id.*** at 15. An inference is a conclusion reached by considering other facts and deducing a logical consequence from them, while speculation is mere theorizing or guessing about the possible meaning of facts and evidence presented. ***Id.*** at 16.

---

regarding Appellant's intent. A conviction for burglary of a habitation may rest on a finding that the person charged, having entered the habitation without effective consent of the owner, attempted to commit or committed an assault therein. *See* TEX. PENAL CODE ANN. § 30.02(a)(3) (West 2023).

The sufficiency of the evidence is measured against the offense(s) as defined by a hypothetically correct jury charge. *See Malik v. State*, 953 S.W.2d 234, 240 (Tex. Crim. App. 1997). A hypothetically correct jury charge "accurately sets out the law, is authorized by the indictment, does not unnecessarily increase the State's burden of proof or unnecessarily restrict the State's theories of liability, and adequately describes the particular offense for which the defendant is tried." *Id.* As is pertinent to this case, a person commits the offense of burglary of a habitation if he enters a habitation without the effective consent of the owner and commits or attempts to commit an assault. TEX. PENAL CODE ANN. § 30.02(a)(3) (West 2023).

**Analysis**

Appellant contends that because he was a resident of the Cedar Knoll apartment, he could not have entered the habitation without the owner's consent. However, Appellant's purported status as a resident of the apartment does not shield him from prosecution for burglary under Texas law. The Texas Penal Code defines "owner" as a person who "has title to the property, possession of the property, whether lawful or not, or a greater right to possession of the property than the actor[.]" TEX. PENAL CODE ANN. § 1.07(35) (West 2023). Texas courts apply the "greater right to possession" doctrine to prosecutions for burglary; a defendant who has some, but less, right to control a habitation than the alleged owner may therefore be prosecuted for burglary of that habitation. *Morgan v. State*, 501 S.W.3d 84, 91 (Tex. Crim. App. 2016).

In *Morgan*, the Texas Court of Criminal Appeals held that although the defendant lived with his girlfriend in her apartment, because she paid the rent and was the only one named in the lease, she had a greater right to possession and was the "owner" of the apartment. *Id.* Consequently, the defendant was subject to prosecution for burglary of his girlfriend's apartment. *See id.*; *see also Aldana v. State*, No. 04-18-00369-CR, 2018 WL 6331025, at *2 (Tex. App.—San Antonio Dec. 5, 2018, no pet.) (mem. op., not designated for publication) (apartment resident's boyfriend, who was not signatory to the lease and did not have a key, had lesser right to possession than resident girlfriend). Similarly, in this case, the evidence supports a finding that Williams had a greater right to possession of the apartment than Appellant. Both Williams and Appellant testified that only Williams's name was on the lease, and Appellant did not have a key to the apartment. Williams testified that Appellant only occasionally stayed at the apartment overnight following the initial criminal trespass in December 2020, but did not resume a permanent residence there. As sole judge of the witnesses' credibility, the jury was entitled to

5

believe Williams's recounting of events over Appellant's contrary account. *See Lee v. State*, 176 S.W.3d 452, 458 (Tex. App.–Houston [1st Dist.] 2004). Although the evidence suggests Appellant's name may have been attached to the electricity utility account for several months, this factor would not grant him equal or greater ownership rights to the apartment than the rights held by Williams. Therefore, based on the applicable law and evidence, we hold that the jury could reasonably infer either that Appellant did not have any right to possess the apartment, or that Williams's right to possess the apartment as the "owner" was greater than Appellant's, and that Appellant was subject to prosecution for burglary. We overrule Appellant's sole issue.

## DISPOSITION

Having overruled Appellant's sole issue, we ***affirm*** the judgment of the trial court.

GREG NEELEY
Justice

Opinion delivered May 8, 2024.
*Panel consisted of Worthen, C.J., Hoyle, J., and Neeley, J.*

6



# COURT OF APPEALS

# TWELFTH COURT OF APPEALS DISTRICT OF TEXAS

# JUDGMENT

**MAY 8, 2024**

**NO. 12-23-00237-CR**

**TYLER DE'SHUNTA SMITH,**
Appellant
V.
**THE STATE OF TEXAS,**
Appellee

Appeal from the 7th District Court

of Smith County, Texas (Tr.Ct.No. 007-2174-22)

THIS CAUSE came to be heard on the appellate record and briefs filed herein, and the same being considered, it is the opinion of this court that there was no error in the judgment.

It is therefore ORDERED, ADJUDGED and DECREED that the judgment of the court below **be in all things affirmed**, and that this decision be certified to the court below for observance.

Greg Neeley, Justice.
*Panel consisted of Worthen, C.J., Hoyle, J., and Neeley, J.*